O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GEORGE A. HINSHAW, | ) | Case No. CV 14-06157 DDP (PLAx) |
| Plaintiff, | ) ) | **ORDER GRANTING DEFENDANT UNUM LIFE INSURANCE COMPANY OF AMERICA'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF GEORGE A. HINSHAW'S MOTION FOR SUMMARY JUDGMENT** |
| v. | ) ) | |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | ) ) ) | |
| Defendant. | ) ) | [Dkt. Nos. 22, 30] |

This is an action for long-term disability benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Plaintiff George A. Hinshaw ("Hinshaw"), proceeding pro se, contests the termination of his long-term disability benefits by Defendant Unum Provident Life Insurance Company of America ("Unum"). Presently before the Court are Hinshaw and Unum's cross-motions for summary judgment. (See Dkt. Nos. 22, 30.) Having considered the parties' submissions and heard oral argument, the Court GRANTS Defendant Unum's motion, DENIES Plaintiff Hinshaw's motion, and adopts the following order.

///

///

## I. BACKGROUND

Hinshaw was working as a cable television installer in 2005, when he was involved in a car accident while on the job. (Administrative Record ("AR") 79, 85.) As a result of the accident, he had bad back pain and persistent lumbar/spine issues, and he submitted a claim for long-term disability ("LTD") benefits to Unum in December 2005. (AR 79-85.) In August 2006, After investigation that included review of Hinshaw's medical records and evaluation by a doctor, Unum decided that Hinshaw qualified for LTD benefits and started monthly payments. (AR 203.)

Under the terms of Unum's LTD Plan, the first two years of payments are automatic once the employee has been deemed "disabled." (AR 1806.) After this, Unum must determine if the insured remains disabled and thus eligible for continued LTD benefits. (Id.) To qualify as disabled, the insured must show that by reason of his disability, he "cannot perform each of the material duties of his regular occupation and, after 24 months, the insured cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted by training, education or experience." (Id.)

The initial 24 month period would have ended for Hinshaw in December 2007. In a June 11, 2007 letter to Hinshaw, Unum indicated that it did not anticipate a change in his disability or medical status and therefore extended its approval of his benefits through the year 2024. (AR 924-26.) The letter stated that this approval was subject to verification from time to time, whereupon Unum would ask Hinshaw to provide Unum with updated medical information or other documentation. (Id.) Unum also required that

1  Hinshaw provide Unum with notice should Hinshaw be able to return
2  to work in any capacity.  (Id.)  This was consistent with the terms
3  of Unum's LTD Plan, which required that for monthly payments to
4  continue, the insured should provide proof, upon request, of
5  continued disability and regular attendance of a physician.  (AR
6  1810.)
7     Unum periodically requested more documentation from Hinshaw
8  after 2007, which Hinshaw provided.  (AR 966-1206.)  In June 2009,
9  Hinshaw informed Unum that he had been "tutoring and mentoring" at
10 MLB Academy on a part-time basis, but Unum apparently decided to
11 continue Hinshaw's LTD benefits.  (AR 997, 1160.)  In 2013, during
12 what appears to be a regular review of Hinshaw's file, Unum ran a
13 comprehensive online data search and found that Hinshaw had been
14 working as a baseball coach at Los Angeles City College, a fact
15 Hinshaw had never disclosed to Unum.  (AR 1310-1420.)  Hinshaw had
16 also obtained a Bachelor's degree (2006) and a Master's degree in
17 Education (2008) from the University of Phoenix.  (Id.)  Unum sent
18 Hinshaw a request for his 2012 tax returns and supporting
19 documentation.  (AR 1423-25.)  Unum also sent requests to Hinshaw's
20 doctor for more updated medical records, and Hinshaw's doctor
21 informed Unum that Hinshaw's last visit had been in May 2011.  (AR
22 1454-1458.)  Based on the new information, in April 2013, Unum
23 requested Hinshaw's tax returns for 2008-2012 as well as updated
24 medical documentation of Hinshaw's disability.  (AR 1470-72, 1477-
25 1482.)  Hinshaw submitted proof of a request for extension on his
26 2012 taxes, but either could not find or did not file his 2011
27 taxes.  (AR 1506.)  Hinshaw had been to see a doctor - his
28 orthopedic specialist - as of May 2011, but it appears that Hinshaw

did not see a doctor after this date.  Unum then requested to schedule an in-person visit with Hinshaw, which Hinshaw cancelled or postponed before it could be held.  (AR 1474-75, 1513.)

After several months of trying to obtain information from Hinshaw and his doctors, Unum arranged for an internal medical review to determine whether the information they had could support a finding that Hinshaw still qualified for benefits.  (AR 1526-27.)  Internal medical staff determined that, based on the information they have, Hinshaw could perform work that was sedentary to medium in activity, and suggested three alternate occupations for Hinshaw: eligibility worker, order clerk, and student adviser.  (AR 1533, 1537-1549.)  Based on its own internal review, Unum concluded Hinshaw was not entitled to further LTD benefits and sent a letter to Hinshaw informing him that his benefits would be terminated effective August 23, 2013.  (1561-66.)

In December 2013, Hinshaw appealed the termination decision to UNUM's appeals unit, but did not appear to provide much new information regarding his medical condition other than a detailed medical examination report from 2010 and related deposition testimony of a doctor who had performed the 2010 examination.  (AR 1578-1663.)  When asked if he was going to provide additional information for his appeal, Hinshaw stated that he believed the information that he had provided was sufficient.  The specialist assigned to the appeal upheld the decision to terminate.  (AR 1781-88.)  Hinshaw has now appealed the termination of benefits to this court.

///

///

## II. LEGAL STANDARD

Summary judgment is proper where a movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, summary judgment should be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Parth v. Pomona Valley Hosp. Med. Ctr., 630 F.3d 794, 798-99 (9th Cir. 2010).

To satisfy its burden at summary judgment, a moving party without the burden of persuasion "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). With respect to a moving party with the burden of persuasion, "to prevail on summary judgment it must show that the evidence is so powerful that no reasonable jury would be free to disbelieve it." Shakur v. Schriro, 514 F.3d 878, 890 (9th Cir. 2008) (internal quotation marks omitted).

"If the party moving for summary judgment meets its initial burden," the nonmoving party must, "by affidavit or as otherwise provided in Rule 56," affirmatively identify "specific facts showing that there is a genuine issue for trial." T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (internal citations and quotation marks omitted). Establishing a genuine issue for trial means doing "more than

5

simply show[ing] that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587.

With that said, courts do not weigh conflicting evidence or adjudge credibility at the summary judgment stage, and must view all evidence and draw all inferences in the light most favorable to the non-moving party. See T.W. Elec. Serv., 809 F.2d at 630-31 (citing Matsushita Elec. Indus. Co., 475 U.S. at 587); Hrdlicka v. Reniff, 631 F.3d 1044 (9th Cir. 2011); Motley v. Parks, 432 F.3d 1072, 1075 & n.1 (9th Cir. 2005).

**III. ANALYSIS**

**A. Unum's Termination of Plaintiff's Benefits**

The initial issue in this case is what standard of review the Court should apply. Unum argues in its motion that the abuse of discretion applies. Although Hinshaw mostly seems to accept an abuse of discretion standard in sections of his motion, he also appears to argue that the Court should apply a more rigorous standard of review.

The denial of benefits under an ERISA plan is reviewed de novo by the district court, unless the terms of the plan "unambiguously" grant the plan administrator or fiduciary discretionary authority to determine eligibility for benefits. Opeta v. Northwest Airlines Pension Plan, 484 F.3d 1211, 1216 (9th Cir. 2007); Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). In that event, the denial of benefits is reviewed for abuse of discretion. Saffon v. Wells Fargo & Co. Long Term Disability Plan, 511 F.3d 1206, 1209

(9th Cir. 2008).  Accordingly, the "essential first step" is to "examine whether the terms of the ERISA plan unambiguously grant discretion to the administrator."  Feibusch v. Integrated Device Tech., Inc., 463 F.3d 880, 883 (9th Cir. 2006)(internal quotation omitted).

Discretionary authority consists of the "power to construe the terms of the plan," as opposed to where the plan merely "identif[ies] the plan administrator's tasks, but bestow[s] no power to interpret the plan."  Opeta, 484 F.3d at 1216 (internal quotation omitted); see also Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 962-65 (9th Cir. 2006)(holding that discretion is unambiguously conferred on the administrator when a plan grants "the power to interpret plan terms and to make final benefits determinations," and particularly where exclusive authority for final benefits determinations rests with the plan administrator).

However, if the plan administrator is also an insurer, then there is a conflict of interest, and that conflict of interest "must be weighed as a factor in determining whether there is an abuse of discretion."  Tremain v. Bell Industries, Inc., 196 F. 3d 970, 976 (1999).  In such a circumstance, although the review is still for abuse of discretion, it is less deferential to the administrator.  Id.

If a plaintiff can present evidence that the conflict of interest arises to the level of a breach of a fiduciary duty to the plan participant, however, then the district court should review the plan administrator's decision de novo.  If, however, the program participant presents "material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the

7

fiduciary's self interest caused a breach of the administrator's fiduciary obligations to the beneficiary," a rebuttable presumption arises in favor of the participant. <u>Lang v. Long-Term Disability Plan of Sponsor Applied Remote Technology, Inc.</u>, 125 F.3d 794, 798 (9th Cir. 1997). The plan then "bears the burden of rebutting the presumption by producing evidence to show that the conflict of interest did not affect its decision to deny or terminate benefits." <u>Id.</u> If the administrator fails to carry this burden of rebutting the presumption, the court will review the administrator's decision de novo.

Here, the terms of the LTD Plan explicitly give Unum "discretionary authority both to determine an employee's eligibility for benefits and to construe the terms of this policy." AR at 1800. This grant of discretionary authority is unambiguous. However, at a minimum, a heightened standard of review should apply because Unum is both the plan administrator and the insurer, a factor which must be taken into account as a potential cause of a conflict of interest.

Unum contends that under the abuse of discretion standard, its termination of Hinshaw's benefits was clearly reasonable and justified. Hinshaw's arguments are difficult to decipher, but at a minimum, he argues that the LTD Plan's terms were unclear, and that Unum's communications to him were misleading and in bad faith - possibly in violation of Unum's fiduciary duty towards Hinshaw. Hinshaw further argues that Unum's termination of his benefits fail the abuse of discretion standard. Although it is unclear whether there is sufficient evidence before the Court to show that Unum's self-interest cause a breach of fiduciary duty to Hinshaw, the

8

Court need not resolve this issue, as it finds that either under a de novo or abuse of discretion standard, Unum's termination of Hinshaw's benefits was sufficiently supported by the evidence on the record.

When reviewing a decision under either a de novo or abuse of discretion standard, the Court generally should only consider the record that was in front of the plan administrator at the time of the decision. See Kearney v. Standard Ins. Co., 175 F.3d 1084, 1090 (9th Cir. 1999); Winters v. Costco Wholesale Corp., 49 F.3d 550, 553 (9th Cir. 1995). Unum has provided the Court with the full administrative record, which the Court has reviewed in making its determination. Hinshaw has not argued for the Court to consider any material outside of the administrative record.

Hinshaw primarily argues that Unum only conducted a "paper review" of his eligibility for benefits, which was insufficient for Unum to determine whether he was still disabled as defined by the terms of the LTD Plan. However, the administrative record shows that Unum gave Hinshaw notice that it was reviewing his eligibility and requested prior tax returns as well as medical documentation from him. At least from April 2013, if not earlier, Hinshaw was on notice that Unum was aware of his employment during the time when he was disabled and required documentation of his continued disability. Unum gave Hinshaw several months to provide additional documentation of his injury and continued lack of ability to return to work. It also attempted to schedule an in-person visit with Hinshaw, which Hinshaw himself cancelled. Hinshaw confirmed that his last visit to a doctor had been in 2011, two years prior.

Given evidence of Hinshaw's coaching and tutoring jobs in

9

2008-2009 and his lack of post-2011 medical visits, added to Hinshaw's lack of responsiveness to Unum's request for further documentation and proof of disability, Unum reasonably concluded that Hinshaw no longer qualified for benefits under the LTD Plan. Although Unum's own internal review conducted by medical personnel was only a "paper" review, Unum's conclusion that Hinshaw could be employed in a more sedentary position was reasonably supported by the evidence. The suggested types of employment in Unum's internal report would qualify as "any gainful occupation for which [the insured] is reasonably fitted by training, education or experience." (AR 1806.)

The Court cannot find evidence of egregious mishandling of Hinshaw's case – either under abuse of discretion standard or under de novo review. Although Unum might have conducted a more thorough investigation of Hinshaw's disability, Unum gave Hinshaw multiple opportunities to provide updated medical documentation of his disability, both during its 2013 review of Hinshaw's eligibility and during Hinshaw's appeal. Unum also requested an in-person visit from a representative, which Hinshaw cancelled. Unum made clear to Hinshaw in its letters and in the terms of the LTD Plan that he would be asked to provide documentation such as doctor's exams in order to support his continued claim. As Hinshaw had not seen his doctor since 2011 and did not see his doctor even after receiving Unum's letters requesting medical documentation, it was reasonable and within the terms of the LTD Plan for Unum to decide to terminate Hinshaw's benefits.

**B. Safe Harbor**

Hinshaw also argues that ERISA is not applicable to this case,

because the "safe harbor" provision applies.  Typically, ERISA provides the exclusive remedies for claims for benefits under a plan governed by ERISA, and completely preempts application of state law to an action based upon an insurer's alleged failure to pay benefits under the terms of an ERISA plan.  29 U.S.C. § 1144(a).  Plans which are not maintained or established by an employer, however, fall under a "safe harbor" provision, and are exempt from ERISA coverage.  29 C.F.R. § 2510.3-1(j).

The "safe harbor" provision does not apply here, as the evidence undisputably shows that the LTD Plan .  The LTD Plan specifically states that it falls under ERISA, and further that the employer and employee both pay into the plan.  (AR 1796, 1800.) Since the LTD Plan at issue is an employer-sponsored plan, it does fall under ERISA and the "safe harbor" provision does not apply.

**IV. CONCLUSION**

For the reasons stated above, the Court GRANTS Unum's motion for summary judgment and DENIES Hinshaw's motion for summary judgment.

IT IS SO ORDERED.

Dated: May 6, 2015

DEAN D. PREGERSON
United States District Judge